AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br><br>7/18/2022<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___DTA___ DEPUTY | UNITED STATES DISTRICT COURT<br>for the<br>Central District of California | FILED<br>CLERK, U.S. DISTRICT COURT<br><br>07/18/2022<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___M.B.___ DEPUTY |

| United States of America<br>v.<br>MONTY DARRIN SIMPSON,<br>Defendant. | Case No. 8:22-mj-00498-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 21, 2022, in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A) | Possession with the Intent to Distribute Fentanyl |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Daniel Thompson, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 18, 2022

Judge's signature

City and state: Santa Ana, California

Hon. John D. Early, U.S. Magistrate Judge
*Printed name and title*

AUSA: K. Spencer (ext. 3531)

**AFFIDAVIT**

I, Daniel Thompson, being duly sworn, declare and state as follows:

## I.  PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for Monty Darrin Simpson ("SIMPSON") for violations of 21 U.S.C. § 841(a)(1), (b)(1)(A): Possession with Intent to Distribute Fentanyl.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since August of 2001.  I am currently assigned to the ATF Los Angeles Field Division, Santa Ana Field Office.  I am charged with investigating violations of federal arson, explosives and firearm laws and regulations.  I regularly refer to these laws and regulations during the course of my official duties.  In the

course of my employment as an ATF SA, I have assisted in and conducted numerous investigations involving criminal street gangs, possession of firearms and/or ammunition by prohibited persons, possession of stolen firearms, possession of machineguns, and the illegal trafficking of firearms and narcotics.  As an ATF SA, I have also participated in numerous federal and state search and arrest warrants involving individuals engaged in unlawfully possessing and trafficking firearms and narcotics.  I am a graduate of the Criminal Investigator Training Program instructed at the Federal Law Enforcement Training Center ("FLETC") and have completed specialized training at the ATF National Academy in the fields of arson, explosives, and firearms.

### III. SUMMARY OF PROBABLE CAUSE

4.  On January 21, 2022, Huntington Beach Police Department ("HBPD") Special Investigation Bureau ("SIB") Investigators conducted a traffic stop of Monty Darrin SIMPSON at an Extended Stay America hotel in Long Beach, California. HBPD had previously received information from multiple confidential sources that SIMPSON was in possession of firearms and was believed to be selling drugs.  SIMPSON was also on federal supervised release in the District of Utah and had an active arrest warrant for violating his supervised release conditions.

5.  Following the stop, investigators searched SIMPSON's vehicle and found, among other things, two firearms, a firearm silencer, more than one hundred rounds of ammunition, more than

four kilograms of methamphetamine, and nearly 1.5 kilograms of fentanyl.

### IV. STATEMENT OF PROBABLE CAUSE

6. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   January 21, 2022, Arrest of SIMPSON**

7. On the evening of January 21, 2022, investigators from the HBPD SIB were in the parking lot of the Extended Stay America hotel located at 4105 Willow Street in Long Beach, California conducting surveillance of Monty Darrin SIMPSON. HBPD had previously received information from multiple confidential sources[1] that SIMPSON was supplying drugs in Orange County and was known to carry firearms.  One of the sources identified SIMPSON's vehicle as a Silver 2009 Chevrolet Corvette with vanity license plate number RAYCCAR.  On January 21, 2022, one of the sources indicated that SIMPSON was possibly staying at the Extended Stay America hotel located at 4105 Willow Street in Long Beach, California.

8. HBPD Detective Gutierrez had previously obtained a photograph of SIMPSON and determined he was under supervision by the United States Probation Office and had an outstanding

---

[1] The sources in this case were confidential sources for the Huntington Beach Police Department and Orange County Sheriffs Department who had been known to give reliable information in the past.  The confidential sources had each previously received consideration for providing information and participating in unrelated investigations.  However, in this case, the confidential sources were not offered or promised any consideration for providing the information.

federal arrest warrant related violations of conditions of his supervision issued out of the District of Utah, in case number 2:14-CR-00013.

9. At approximately 6:20 p.m., investigators saw SIMPSON exit the hotel with another male subject. SIMPSON was carrying a backpack. After exiting the hotel, SIMPSON and the male subject walked to SIMPSON'S vehicle, which was the same Silver Chevrolet Corvette identified by the confidential source. When he arrived at the vehicle, SIMPSON placed the backpack onto the passenger side front seat. SIMPSON then walked to the driver's side and entered the vehicle while the other male subject walked away.

10. After seeing SIMPSON enter the vehicle, the investigators activated the forward facing red and blue lights of their patrol vehicles in order to initiate a traffic stop before SIMPSON exited the parking lot. Investigators attempted to block SIMPSON'S vehicle from leaving the parking lot, but SIMPSON accelerated at a high rate of speed around their vehicle.

11. SIMPSON hit a curb, then drove westbound through the parking lot towards the exit. After a short pursuit, investigators utilized a pursuit intervention technique -- which involved bumping SIMPSON's vehicle with a patrol car in order to cause him to lose traction and stop -- in order to stop him from fleeing any further and or injuring anyone in the area. SIMPSON'S vehicle ultimately came to a stop on East Willow

Street approximately 100 yards from the hotel. Detectives then ordered SIMPSON out of his vehicle and handcuffed him.

12. HBPD detectives Gutierrez and Mossbrooks proceeded to conduct a pat down search of SIMPSON's person. While searching SIMPSON, Detective Gutierrez located a large wad of US currency in his front pants pocket, along with additional U.S. currency in his wallet. Detective Gutierrez asked SIMPSON how much money he had on his person; SIMPSON stated it was approximately $8,500. A cell phone was also located on SIMPSON'S person.

13. Prior to conducting a search of the vehicle, Detective Gutierrez asked SIMPSON where the firearms and drugs were located in his vehicle. SIMPSON initially stated he did not know what was in the vehicle, but then stated that the firearms were in the backpack with the drugs. HBPD Lieutenant Garcia then read SIMPSON his Miranda rights, and SIMPSON indicated that he did not want to talk to the investigators.

14. While searching the vehicle, HBPD Detective Mossbrooks located a grey "Ogio" brand backpack on the front passenger floorboard, which appeared to be the same backpack that SIMPSON had earlier placed in the car. Detective Mossbrooks searched the backpack and found the following:

   a. Inside of a zipper compartment in the backpack, Detective Mossbrooks found a silver and black Smith and Wesson model SD9 9mm pistol, bearing serial number FBJ4033, which was loaded fifteen rounds of 9mm ammunition. There was also a round of 9mm ammunition in the chamber. In the same compartment, Detective Mossbrooks found a silver and black Colt Commander .45

caliber pistol, bearing serial number 70SC56527, which was loaded with eight rounds of .45 caliber ammunition.

  b. In another compartment of the backpack, Detective Mossbrooks found several baggies containing what appeared to be prescription pills and a black tar-like substance that, based on his training and experience, he believed to be heroin.

  c. In a third compartment of the backpack, Detective Mossbrooks located another baggie containing several small blue circular pills with the inscription "M30" on them.

  d. In the main compartment of the backpack, Detective Mossbrooks found several gallon-sized Ziploc bags containing a white crystal-like substance that, based on his training and experience, he believed to be methamphetamine. He also found a functioning digital scale with white residue and several plastic baggies. Based on my training and experience, I know that drug traffickers use digital scales and plastic baggies to weigh and package smaller quantities of drugs for sale.

  e. In another compartment of the backpack inside of the main compartment, Detective Mossbrooks found several larger Ziploc bags containing an off-white powdery substance that, based on his training and experience, he suspected to be fentanyl, along with more small plastic baggies. He also found a plastic bag containing a smaller amount of a white crystalline substance that appeared to be methamphetamine, and another plastic bag containing a small amount of an off-white powdery like substance that appeared to be fentanyl.

15. On the front passenger floorboard of the vehicle, Detective Mossbrooks located another small black backpack, which was locked. Detective Mossbrooks asked SIMPSON for the key to the backpack, and SIMPSON indicated that the key was on the keychain inside of the vehicle. After opening the backpack, Detective Mossbrooks discovered that it contained what appeared to be several thousand dollars in U.S. currency.

16. In the trunk of the vehicle, Detective Mossbrooks found a green ammunition can containing a black cylindrical item that, based on his training and experience in firearms, Detective Mossbrooks recognized as a firearm suppressor, also known as a silencer. He also found a tan-colored magazine that was loaded with thirty-one round of .556 caliber ammunition and a second magazine loaded with twenty-eight rounds of .223 caliber ammunition. At the bottom of the ammunition can was a box containing an additional one hundred rounds of .223 caliber ammunition. Detective Mossbrooks also found a Target store bag with several large Ziploc bags containing a white crystalline substance that appeared to be methamphetamine.

17. Following the search, SIMPSON was placed under arrest on the outstanding federal warrant.

18. The Orange County Crime Lab ("OCCL") later weighed and tested the suspected narcotics found in the vehicle and determined them to include the following[2]:

---

[2] Not all substances were weighed and tested.

      a.    Approximately 80.04 grams of a substance containing fentanyl and para-fluorofentanyl, a fentanyl analogue;

      b.    Approximately 61.15 grams of a substance containing fentanyl;

      c.    Approximately 4,486.96 grams of a substance containing methamphetamine[3]; and

      d.    Approximately 1,319.86 grams of a substance containing fentanyl and para-fluorofentanyl, a fentanyl analogue.

## V. CONCLUSION

19. For the reasons described above, there is probable cause to believe that SIMPSON has committed a violation of 21 U.S.C. § 841(a)(1), (b)(1)(A): Possession with the Intent to Distribute Fentanyl.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 18th day of
July, 2022.

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE

---

[3] The OCCL did not determine the purity of the methamphetamine.